**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

COURTNEY G.,

                                Plaintiff,

v.                                            8:23-CV-01233
                                                (DJS)

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

_____

**APPEARANCES:**                                 **OF COUNSEL:**

SCHNEIDER & PALCSIK                MARK A. SCHNEIDER, ESQ.
_Attorney for Plaintiff_
57 Court St.
Plattsburgh, New York 12901

SOCIAL SECURITY ADMINISTRATION      FERGUS KAISER, ESQ.
OFFICE OF GENERAL COUNSEL
_Attorney for Defendant_
6401 Security Boulevard
Baltimore, Maryland 21235

**DANIEL J. STEWART**
**UNITED STATES MAGISTRATE JUDGE**

**<u>MEMORANDUM DECISION AND ORDER</u>**[1]

        Plaintiff, Courtney G., brought this action pursuant to 42 U.S.C. § 405(g) seeking review

of a decision by the Commissioner of Social Security that Plaintiff was not disabled.  Currently

before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for

Judgment on the Pleadings.  Dkt. Nos. 14, 18.  Plaintiff filed a reply.  Dkt. No. 19.  For the reasons

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Dkt. No. 7 & General Order 18.

set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied, and Defendant's Motion is granted.

## I. BACKGROUND

### A. Factual Background

Plaintiff was born in 1990 and has past work experience as a fast-food worker. Dkt. No. 9, Admin. Tr. ("Tr."), pp. 1040, 1064. Plaintiff alleges disability due to small intestine bacterial overgrowth, occasional seizures, manic depression, anxiety, borderline personality disorder, and post-traumatic stress disorder ("PTSD"). Tr. at p. 54. On June 11, 2019, Plaintiff applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. Tr. at pp. 217-220, 225-226. Plaintiff's applications were denied, Tr. at pp. 127, 129, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at p. 212. Plaintiff subsequently appeared and testified at a hearing before ALJ Matthew Levin on August 26, 2020. Tr. at pp. 35-52. On September 29, 2020, ALJ Levin issued a written decision finding Plaintiff was not disabled under the Social Security Act. Tr. at p. 22. On January 5, 2021, the Appeals Council denied Plaintiff's request for review. Tr. at pp. 1-3. Plaintiff then sought judicial review in this District, which resulted in the ALJ's decision being reversed and remanded to the Commissioner. Tr. at pp. 1082-1083. After a second hearing, ALJ Levin again issued an unfavorable decision finding Plaintiff was not disabled. Tr. at pp. 1052-68, 1026-1042. Plaintiff timely appealed by the filing of the operative complaint. Dkt. No. 1.

### B. The ALJ's Decision

In his most recent decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through June 30, 2018, and she had not engaged in substantial gainful activity since her alleged

onset date.  Tr. at p. 1028.  Second, the ALJ found Plaintiff had the following severe impairments: a headache disorder, a gastrointestinal disorder, a seizure disorder, anxiety, PTSD, and a borderline personality disorder.  Tr. at p. 1029.  Third, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926) ("Listings").  Tr. at p. 1033.  Fourth, the ALJ found Plaintiff has the residual functional capacity ("RFC")

> to perform medium work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except the claimant needs to avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights.  She should have access to bathroom facilities during normal work breaks.  She is able to understand, [and], remember . . . simple and some detailed instructions and to complete simple and some detailed tasks on a consistent basis.  She can relate[] and respond in an appropriate manner with the general public in a superficial public context setting.  She can adapt to changes in detailed, non-complex task environments and use appropriate judgment to make effective task-related decisions in such settings.

Tr. at pp. 1035-36.  Fifth, the ALJ found Plaintiff could not perform any past relevant work.  Tr. at p. 1040.  Sixth, the ALJ found based on Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that she can perform.  *Id*.  The ALJ, therefore, concluded Plaintiff is not disabled.  Tr. at p. 1042.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F. 2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F. 2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt

whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.");
*accord Grey v. Heckler*, 721 F. 2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F. 2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F. 2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F. 2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs*., 733 F. 2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step determination whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme

Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482

U.S. 137, 141-42 (1987). The five-step process asks:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2)
> whether the claimant has a severe impairment or combination of impairments; (3)
> whether the impairment meets or equals the severity of the specified impairments
> in the Listing of Impairments; (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her past relevant work
> despite the impairment; and (5) whether there are significant numbers of jobs in the
> national economy that the claimant can perform given the claimant's residual
> functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F. 3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*,

540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Idiopathic Intracranial Hypertension Severity

#### *1. Step Two Determination*

At step two of the five-step sequential evaluation process, the ALJ concluded Plaintiff had

seven severe impairments: a headache disorder, a gastrointestinal disorder, a seizure disorder,

depression, anxiety, PTSD, and a borderline personality disorder. Tr. at p. 1029. The ALJ further

concluded Plaintiff's intracranial hypertension and asthma were not severe. Tr. at pp. 1032-33.

The ALJ then proceeded to step three, concluding none of Plaintiff's impairments or combination

of impairments met or medically equaled the listings. Tr. at p. 1033.

Plaintiff claims the ALJ erred at step two by "not considering her idiopathic intracranial

hypertension ("IIH") as severe." Dkt. No. 14, Pl.'s Mem. of Law at p. 21. She further claims the

ALJ "erred at Step 4 by not including any limitations caused by her IIH and migraine headaches

[in] his RFC determination." *Id*. The Commissioner contends the ALJ reasonably and properly

found that her IIH was not a severe impairment based on the record and substantial evidence supports this determination. Dkt. No. 18, Def's Mem. of Law at pp. 9-10.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id*. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Covlin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).

At step two, "[a]n impairment is 'severe' if it 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Eralte v. Colvin*, 2014 WL 7330441, at *10 (S.D.N.Y. Dec. 23, 2014) (quoting 20 C.F.R. § 404.1520(c)). "When the parties disagree over the effect of the ALJ's failure to include a condition at step two, resolution of this issue comes down to a question of whether there was substantial evidence to support the ALJ's conclusion that [the omitted condition] should not be included as a severe impairment." *Id*.; *Cwiklinski v. Comm'r of Soc. Sec.*, 2020 WL 1131223, at *3 (W.D.N.Y. Mar. 9, 2020) ("Where a claimant produces some evidence of an impairment, the Commissioner may conclude that the impairment is non-severe only where the medical evidence 'establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" (quoting SSR 85-28, 1985 WL 56856, at *3 (1985))). "[T]he severity prong is intended as a *de minimis* standard to screen out only those claimants with 'slight' limitations that 'do not significantly limit any basic work activity.'" *Vicari v. Astrue*, 2009 WL 331242, at *3 (E.D.N.Y. Feb. 10, 2009) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987)); *Melendez v. Comm'r of Soc. Sec.*, 2020 WL 4274510, at *2 (W.D.N.Y. July 24, 2020) ("In other words, the analysis at step two

is a threshold test designed to screen out *de minimis* or totally groundless claims." (citations omitted)).

Plaintiff contends the ALJ "erred in characterizing her IIH as 'benign' assuming that 'benign' under these circumstance means that it causes no symptoms." Pl.'s Mem. of Law at p. 23. The ALJ noted that Plaintiff was diagnosed with IIH and attributed headaches as a symptom. Tr. at p. 1032. Further, the ALJ noted Plaintiff's IIH as benign likely because throughout the medical record it was referred to as benign. Tr. at pp. 1334, 1345-46, 1348, 1351-52, 1356, 1358-60, 1362-63, 1367-68. Additionally, Plaintiff did not allege IIH in her disability application materials. Tr. at pp. 54, 217-20, 225-26. During the hearing Plaintiff merely mentioned she had IIH then continued that she is on a diuretic and headache preventative medication to control migraines which are a symptom of IIH. Tr. at p. 1056. While the record consistently shows Plaintiff with symptoms of recurrent headaches, she never had focal deficits, vision changes or other concerning features that indicate IIH would affect her ability to perform basic work functions. Tr. at pp. 545, 569, 766, 771, 781, 785, 788, 797, 1435.

Although the ALJ did not identify IIH as a severe impairment at step two, he did find Plaintiff's headaches to be a severe impairment and considered them throughout the remainder of the assessment. Tr. at p. 1029. This is a case where any limitations arising from Plaintiff's IIH were clearly subsumed within another documented and identified severe impairment. *Cruz v. Colvin*, 2017 WL 1190488, at *3 (W.D.N.Y. Mar. 31, 2017) ("[B]ecause the limitations arising from Plaintiff's TMJ-induced headaches were properly incorporated into the RFC, there was no error in not specifically naming TMJ as a severe impairment at Step Two."); *see generally Paz v. Comm'r of Soc. Sec.*, 2016 WL 1306534, at *13 (E.D.N.Y. Mar. 31, 2016) (remand not warranted despite ALJ's failure to recognize a particular limitation as a severe impairment because the ALJ

did identify severe impairments at step two, so Plaintiff's claim proceeded through the sequential evaluation and ALJ considered the combination of impairments and all symptoms in making the RFC determination); *see also Reices-Colon v. Asture*, 523 F. App'x 796, 798 (2d Cir. 2013); *Bedasie v. Comm'r of Soc. Sec.*, 2022 WL 4326122, at *10-11 (E.D.N.Y. Sept. 17, 2022); *Stacy G. v. Berryhill*, 2018 WL 6250790, at *5 (N.D.N.Y. Nov. 29, 2018).

"[T]he failure to find a specific impairment severe at step two is harmless where the ALJ concludes (a) there is at least one other severe impairment, (b) the ALJ continues with the sequential evaluation, and (c) the ALJ provides explanation showing []he adequately considered the evidence related to the impairment that is ultimately found non-severe." *Stacy G. v. Berryhill*, 2018 WL 6250790, at *5 (collecting cases); *see also Snyder v. Colvin*, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014) (explaining "when [the] functional effects of impairments erroneously determined to be non-severe at step two are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error."). Stated differently, "[w]here an ALJ excludes certain impairments from the list of severe impairments at step two of the sequential analysis, any such error is harmless if the ALJ identifies some severe impairments so that the analysis proceeds and the ALJ considers the effects of the omitted, non-severe impairments during the subsequent steps following step two." *Bedasie v. Comm'r of Soc. Sec*, 2022 WL 4326122, at *10 (collecting cases).

### 2. Substantial Evidence Supports the ALJ's RFC Determination Regarding Plaintiff's Headaches

A claimant's RFC is the most he or she can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A regular and

continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Elizabeth B. v. Comm'r of Soc. Sec.*, 2022 WL 17721254, at *7, (N.D.N.Y. December 15, 2022) (*quoting Pardee v. Astrue*, 637 F. Supp. 2d 200, 210 (N.D.N.Y. 2009)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis. *Id.* (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F. 2d 582, 587 (2d Cir. 1984).

Plaintiff states the ALJ erred by not including her pain caused by migraines and IIH in the RFC. Pl.'s Mem. of Law at p. 27. Based on the entire record, the ALJ found Plaintiff had the RFC to "perform medium work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except the claimant needs to avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights; and she should have access to bathroom facilities during normal work breaks." Tr. at p. 1035. She is able to understand and remember simple and some detailed instructions and complete simple and some detailed tasks on a consistent basis. *Id.* She can relate and respond in an appropriate manner with the general public in a superficial public context setting. Tr. at pp. 1035-36. She can adapt to changes in detailed non-complex task environments and use appropriate judgement to make effective task-related decisions in such settings. Tr. at p. 1036.

As Defendant contends, and the Court agrees, Plaintiff provided no support for this argument, alleging no limitation which should have been included in the RFC, and it is Plaintiff's "burden to prove a more restrictive RFC."  Def.'s Mem. of Law at p. 10 (quoting *Snyder v. Comm'r of Soc. Sec.*, 2023 WL 1943108, at *3 (2d Cir. Feb 13, 2023)).  Further, as stated above, Plaintiff testified she takes medication to control migraines and headaches.  Tr. at p. 1057.  When she has a headache during work, she is able to push through it until the end of the shift.  *Id*.  The ALJ acknowledged Plaintiff could not meet the demands of her previous work as a fast-food worker and concluded she could perform less demanding work that would not be limited by or trigger her impairments.  Tr. at p. 1040.  Therefore, the ALJ's step two determination was supported by substantial evidence.

## B. Evaluating Medical Evidence

For DIB and SSI claims filed on or after March 27, 2017, an ALJ's review of medical opinion evidence and prior administrative medical findings is governed by 20 C.F.R. § 416.920c. Under this regulation, applicable here, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. § 416.920; *see also Schillo v. Kijakazi*, 31 F. 4th at 71 n.1; *Howard D. v. Saul*, 2021 WL 1152834, at *11 (N.D.N.Y. Mar. 26, 2021).  Rather, the ALJ must use five factors to determine the persuasiveness of the medical opinion evidence and prior administrative medical findings: supportability; consistency; relationship with the claimant; specialization; and other factors, such as "a medical source's familiarity with the other evidence in a claim."  20 C.F.R. §§ 416.920(c)(a)-(c); *see also Howard*, 2021 WL 1152834, at *11.

The two most important factors in this analysis are supportability and consistency. 20 C.F.R. § 416.920(c)(b)(2); *see also Loucks v. Kijakazi*, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022). The ALJ is specifically required to "explain how [h]e considered the supportability and consistency factors" when determining the persuasiveness of "a medical source's medical opinions or prior administrative medical findings." *Sarah B. W. v. Kijakazi*, 8:21-cv-50 (TWD), 2022 WL 16734988, at *6 (N.D.N.Y. Nov. 7, 2022) (quoting 20 C.F.R. § 416.920c(b)(2)); *see also Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022) ("It is not sufficient to cite to some objective medical evidence in the record and simply conclude that an opinion is consistent with other evidence in the file rendering it persuasive."). "If the ALJ fails adequately to explain the supportability or consistency factors, or bases [his] explanation upon a misreading of the record, remand is required." *Rivera v. Comm'r of Soc. Sec.*, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021); *see, e.g.*, *Loucks v. Kijakazi*, 2022 WL 2189293, at *2 (remanding where "the ALJ committed [harmful] procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record").

Under the supportability factor, the more a medical opinion or prior administrative medical finding is reinforced by "relevant . . . objective medical evidence and supporting explanation," the "more persuasive" it will be. 20 C.F.R. § 416.920c(c)(1); *see also Carmen M. v. Comm'r of Soc. Sec.*, 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021) ("The supportability factor asks how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations."). Under the consistency factor, a medical opinion or prior administrative medical finding is "more persuasive" if it is consistent "with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 416.920c(c)(2); *see also White v. Comm'r of Soc.*

*Sec.*, 2022 WL 951049, at *5 (S.D.N.Y. Mar. 30, 2022) ("Consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record."); 20 C.F.R. § 416.920b(b) ("We consider evidence to be inconsistent when it conflicts with other evidence, contains an internal conflict, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques.").

"An ALJ must consider, but is not required to discuss, the three remaining factors when determining the persuasiveness of a medical source's opinion." *Howard D. v. Saul*, 2021 WL 1152834, at *11; *see also* 20 C.F.R. §§ 416.920c(a), (b)(2). However, where the ALJ has found two or more divergent medical opinions to be equally well supported and consistent with the record, the ALJ must articulate how he or she evaluated the three remaining factors. 20 C.F.R. § 416.920c(b)(3); *see also Acheampong v. Comm'r of Soc. Sec.*, 564 F. Supp. 3d 261, 267 (E.D.N.Y. 2021).

### 1. Licensed Mental Health Counselor Cassandra Hanley

On August 6, 2020, Cassandra Hanley, LMHC, submitted a source statement. Tr. at pp. 1017-22. Her clinical findings stated Plaintiff had "consistent difficulties managing symptoms of [bipolar disorder]: efforts to avoid abandonment, unstable moods, chronic feelings of emptiness, [and] difficulty controlling [her] anger." Tr. at p. 1017. LMHC Hanley opined that Plaintiff had none to mild limitations in understanding and remembering information but moderate limitations in applying information; marked limitations in interacting with others; marked limitations in concentrating; with extreme limitations in persisting and maintaining pace; marked to extreme limitations with adapting in the workplace; and extreme limitations to managing oneself in the workplace. Tr. at p. 1021.

As the Commissioner contends, and this Court agrees, substantial evidence supports the ALJ's finding that LMHC Hanley's opinion was not persuasive.  Def.'s Mem. of Law at p. 11. The ALJ stated LMHC Hanley's opinion is inconsistent with her own counseling records.  Tr. at p. 1039.  To support this, the ALJ noted from the record instances where Plaintiff had symptoms but was able to manage them herself.  For example, in March 2018, she complained of anger, but was able to control her responses by considering her childcare responsibilities.  Tr. at p. 908.  She reported a wish to harm herself in August 2018 but was able to avoid doing so.  Tr. at p. 912.  In December 2018, she visited a parent and had some issues related to this, but she also acknowledged that she was interacting with other friends and "doing fine."  Tr. at p. 924.  In February 2019, she was upset about a family issue, but she continued to make progress in her treatment.  Tr. at pp. 935-36.  In April 2019, she had a brief voluntary, in-patient stay over the weekend, for mental health symptoms, but during this treatment she reported being able to attend an art group that she enjoyed and socialized with other patients whom she found supportive.  Tr. at p. 949.  She reported extra stress from researching her symptoms and wondered if she was misdiagnosed.  Tr. at p. 950. Plaintiff expressed her interest in going back to school to become a clinician after researching her own condition.  *Id*.  She started dating someone new.  Tr. at p. 951.  She addressed a family situation calmly, and in a rational manner instead of her usual anger and aggressiveness.  Tr. at p. 952.  LMHC Hanley noted Plaintiff was able to think about her actions, discuss things calmly, and have a rational/realistic perspective on her situation, life, and future.  *Id*.  Throughout the sessions, she had normal concentration and memory.  Tr. at pp. 961, 988, 993-94, 996, 1000, 1039.

The ALJ established "that while [Plaintiff] had experienced strong emotions with lability at times, she has been able to manage her symptoms with counseling, has had only a very brief and elective in-patient stay and has engaged in a variety of tasks that require complex actions such

as drawing and sharing artwork online." Tr. at p. 1039. LMHC Hanley's opinion is also inconsistent with Plaintiff's current work activity which involves interacting with the public, and her testimony that she is able to get along with her co-workers. Tr. at pp. 1057-58. Additionally, as further support to find LMHC Hanley unpersuasive, the ALJ properly found that LMHC Hanley is not an acceptable medical source within the meaning of the Social Security Act 20 C.F.R. §§ 404.1502 and 416.902. Tr. at p. 1039.

### 2. Licensed Mental Health Counselor Hillary Southwick

LMHC Southwick gave a statement that she worked with Plaintiff from March 2015 to May 2019. Tr. at p. 248. She opined Plaintiff's past experiences continued to impact her and it appeared more difficult for her to manage as these experiences were often surfacing and created numerous obstacles. *Id*. LMHC Southwick further opined Plaintiff is not able to obtain/maintain employment due to past trauma, more recent diagnoses, and increase in symptoms. *Id*.

LMHC Southwick offered no records or findings to support her opinion. *See* Def.'s Mem. of Law at p. 12. Her statement simply provided vague, unsupported generalities that does not meet the statutory definition of a medical opinion under 20 C.F.R. §§ 404.1513(a)(2) and 416.913(a)(2). *Id*. at 9-10. Further, as stated above, a LMHC is not an acceptable medical source. Tr. at p. 1039. Therefore, the ALJ properly found LMHC Southwick's opinion unpersuasive.

### 3. Dr. Brett Hartman

On October 10, 2019, Dr. Brett Hartman conducted a consultative psychiatric examination of Plaintiff. Tr. at pp. 1010-14. Prior to the examination, Plaintiff reported she had been seeing a counselor at Clinton County Mental Health for the past three to four years. Tr. at p. 1010. Her visits with a counselor were one to two times per month and once per month with a psychiatrist. *Id*. She claimed to go through cycles of deep depression that lasted three to four weeks. Tr. at p.

1011.  She endorsed symptoms of sadness, social isolation, emotional blocking, feelings of guilt, and loss of interest.  *Id*.  She stated her self-esteem had always been low.  *Id*.  Plaintiff claimed she cannot go out in public by herself.  *Id*.  She reported major difficulties in relationships including trusting people and a tendency to sabotage relationships.  *Id*.  She reported a goal is to be able to socialize more.  Tr. at p. 1013.

During his examination, Dr. Hartman found Plaintiff able to understand, remember, and apply simple directions.  Tr. at p. 1013.  She maintained personal hygiene and awareness of hazards.  *Id.*  She had mild to moderate difficulty using reason and judgment.  *Id*.  Dr. Hartman opined she had moderate difficulty understanding, remembering, and applying complex directions. *Id*.  She had moderate to marked difficulty interacting adequately with others.  *Id*.  She had marked difficulty sustaining an ordinary routine due to mood swings and regulating her emotions.  *Id*.

The ALJ found Dr. Hartman's opinion not fully persuasive for several reasons.  Tr. at p. 1037.  While Dr. Hartman opined moderate difficulty understanding, remembering and apply complex directions, Plaintiff testified that she attended college, leaving due to pregnancy, Tr. at p. 38, and she was interested in returning to school to become a clinician.  Tr. at p. 950.  She consistently presented with normal thought, intact memory, and intact attention/concentration.  Tr. at pp. 492 536 612, 726, 730, 733, 873, 889.  The ALJ noted instances where the record contradicted Dr. Hartman's limitation in interacting with others.  Tr. at p. 1038.  This included visiting with family, Tr. at p. 923, interacting with other friends, Tr. at p. 924, attending an art group that she enjoyed and even socialized with others whom she found supportive, Tr. at p. 949, and engaging in a romantic relationship.  Tr. at p. 923.  Lastly, the clinical observations fail to support Dr. Hartman's assertion of marked difficulty sustaining an ordinary routine due to mood swings and regulating her emotions.  Tr. at p. 1038.  The ALJ noted Plaintiff's limitations improved

when forced into the routine required for getting her daughter to and from school on a daily basis, Tr. at p. 828, and when she complained of mood instability but exhibited normal affect, thought, and memory.  Tr. at pp. 869, 881, 883, 902.

**C. The ALJ Properly Found Plaintiff Did Not Meet the Listing Requirements**

Plaintiff alleges based on Dr. Hartman's opinions she is per se disabled under Listings 12.04, 12.06, and 12.15.  Pl.'s Mem. of Law at pp. 27, 37.  As noted above the ALJ found Dr. Hartman's opinion not fully persuasive.  Tr. at p. 1037.  The ALJ determined Plaintiff's paragraph B limitations based on medical findings in the treatment records.  Tr. at pp. 1034-1035.  Further, Plaintiff stated "all examining sources opined that she had marked limitations in at least two areas of mental functioning."  Pl.'s Mem. of Law at p. 37.  Dr. Hennessey's November 2019 report for disability income ("DI") indicated she had moderate limitations in three categories and mild in one category, Tr. at p. 63; Dr. Hennessey's November 2019 report for DIB indicated she had mild limitations in all four categories.  Tr. at p. 83.  Dr. H. Ferrin's report on reconsideration for SSI agreed with Dr. Hennessy's findings, Tr. at p. 99; and on reconsideration for DIB, Dr. Herrin opined there was insufficient evidence to determine any limitations.  Tr. at p. 117.  As previously noted in section 3(B)(1), LMHC Hanley opined after three sessions that Plaintiff had none to moderate limitations in one category, marked limitations in one category, and marked to extreme limitations in two categories.  Tr. at p. 1021.  As set forth above, Dr. Hartman opined Plaintiff had moderate limitations in two categories, moderate to marked limitations in one category, and marked limitations in one category.  Tr. at pp. 1013-14.

The third step of the five-step test employed by the ALJ requires a determination of whether the Plaintiff has an impairment listed in Appendix 1 of the Social Security Regulations.  20 C.F.R. § 404, Subpt. P, App. 1.  "These are impairments acknowledged by the [Commissioner] to be of

sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the 'listed' impairments, he or she is conclusively presumed to be disabled and entitled to benefits." *Glover v. Berryhill*, 2018 WL 739371, at *20 (S.D.N.Y. Feb. 7, 2018) (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995)).

"Plaintiff has the burden of proof at step three to show that [his] impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009). "To meet a Listing, Plaintiff must show that [his] medically determinable impairment satisfies all of the specified criteria in a Listing." *Id.* "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "Additionally, a court may uphold an ALJ's finding that a claimant does not meet a Listing even where the decision lacks an express rationale for that finding if the determination is supported by substantial evidence." *Andrea K. v. Comm'r of Soc. Sec.*, 2021 WL 1224049, at *6 (N.D.N.Y. Mar. 31, 2021). Plaintiff argues she meets the criteria for Listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma and stress related disorders). Pl.'s Mem. of Law at p. 37. To meet the criteria of these Listings, Plaintiff must satisfy the criteria in both paragraphs "A" and "B," or paragraphs "A" and "C." 20 C.F.R. §§ 404 Subpart P, Appendix 1, 12.04, 12.06, 12.15. Paragraph "B" requires:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental function:
> 1. Understand, remember, or apply information.
> 2. Interact with others.
> 3. Concentrate, persist, or maintain pace.
> 4. Adapt or manage oneself.

20 C.F.R. §§ 404 Subpart P, Appendix 1, 12.04B, 12.06B, 12.15B.  For the following reasons, the Court agrees with the Commissioner that the ALJ properly determined Plaintiff's limitations, and supported that determination with substantial evidence in the record from multiple medical findings.  Dkt. No. 18, Def.'s Mem. of Law at pp. 18-19.

The ALJ found Plaintiff had no more than mild limitations in understanding, remembering, or applying information.  Tr. at p. 1034.  In support of this determination, the ALJ noted the July 2016 report from Keith J. Nagle, M.D., that she was able to remember her extensive medical history well, and she completed some college.  Tr. at pp. 1295-99.  Further,  Dr. Hartman noted her IQ was near average, and she was able to engage in a variety of daily activities including shopping and managing money.  Tr. at p. 1011.

Next, the ALJ determined Plaintiff had moderate limitations in interacting with others.  Tr. at p. 1034.  Despite her reported difficulties in this area, the ALJ noted Plaintiff is the primary caregiver to her daughter, the record lacked evidence that she had difficulties interacting with her providers, and she had one close friend.  Tr. at pp. 883, 1006, 1034, 1348.  Additionally, Plaintiff testified she currently has no problems with coworkers at her part-time job.  Tr. at pp. 1057-58.

Next, the ALJ determined Plaintiff had moderate limitations in concentrating, persisting, or maintaining pace.  Tr. at p. 1034.  In support of this, the ALJ cited treatment notes from August 2019, November 2019, and March 2023 documenting no significant issues in normal concentration and attention.  Tr. at pp. 825, 878, 1034, 1295.  Lastly, the ALJ determined she had moderate limitations in the functional area of adapting or managing oneself.  Tr. at p. 1034.  In support of this finding, the ALJ noted instances in which Plaintiff experienced strong emotions but was able to continue daily activities including caring for her daughter.  *Id*.  He also noted reports where she

denied depression and presented with normal mood and effect. *Id.*; *see also* Tr. at pp. 885, 1013, 1034-35, 1349, 1352, 1354, 1374, 1377, 1381, 1462.

Therefore, in light of above, the ALJ's step three determination was supported by substantial evidence.

### D. Crediting Testimony[2]

Plaintiff argues that the ALJ did not sufficiently consider her subjective claims of disabling limitations. Pl.'s Mem. of Law at p. 40. Specifically, she argues the ALJ did not abide by the Court's remand Order contending the ALJ ignored statements by Plaintiff supportive of her claim for disability in contravention to Magistrate Judge Peebles' previously adopted Report and Recommendation. *Id*. at 40-41; *see also* Tr. at pp. 1009-10. The Commissioner contends this argument is without merit and the Court agrees.

Under SSR 16-3p, the ALJ was obligated to "carefully consider all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including daily activities and the location, duration, frequency, and intensity of their pain or other symptoms." *Debra T. v. Comm'r of Soc. Sec.*, 2019 WL 1208788, at *9 (N.D.N.Y. Mar. 14, 2019) (quoting *Del Carmen Fernandez v. Berryhill*, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (internal quotations and alterations omitted)).

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the

---

[2] In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use the term. SSR 16-3p. Instead, symptom evaluation tracks the language of the regulations. The standard for evaluating subjective symptoms has not changed in the regulations. Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." SSR 16-3p, 81 FR at 14167. The Court will remain consistent with the terms used by the Commissioner.

determination is supported by substantial evidence.'" *Dominique v. Comm'r of Soc. Sec.*, 2014 WL 1202622, at *7 (N.D.N.Y Mar. 24, 2014) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). To satisfy the substantial evidence rule, the ALJ's evaluation of symptoms must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id*. § 404.1529(c)(3).

The ALJ described the evaluation of symptoms standard, noting that after concluding Plaintiff's impairments could reasonably be expected to cause the symptoms alleged, he would evaluate the intensity, persistence, and limiting effects of these symptoms. Tr. at p. 1036. After considering Plaintiff's statements as to the intensity, frequency, and limiting nature of her impairments, the ALJ found them to be not entirely consistent. *Id*.

The ALJ specifically acknowledged Plaintiff's reports of panic attacks, anxiety about leaving the house, alleged drowsiness, alleged difficulties with concentration, and getting along with others from the August 2020 hearing. Tr. at p. 1036. The ALJ also acknowledged Plaintiff's testimony at the supplemental hearing in 2023 that she had been working since 2022, but her body locks up at the end of her shift, and she no longer takes medication for anxiety or depression. *Id*. The ALJ explained in detail Plaintiff's daily activities; precipitating and aggravating factors of alleged symptoms, including pain; any and all medications prescribed and/or taken; treatment other

than medication for relief of pain and other symptoms; prior and current work history; observations of treating and consulting physicians of record; counseling records; and other factors bearing on Plaintiff's functional limitations or restrictions due to pain and other symptoms. Tr. at pp. 1037-40.

Specifically, the ALJ noted the record showed there was no evidence she complained of a need to rest in the afternoon due to side-effects of her medication. Tr. at p. 1037. In November 2019, she reported to Nurse Practitioner Oviasogle her energy level increased as the day progressed. Tr. at pp. 867-890, 1037. She admitted her reason for being unable to work in part was due to lack of childcare and transportation. Tr. at p. 825. She was able to use positive leisure activities to manage her symptoms such as playing yard games, swimming, drawing, chores, and exercise. Tr. at pp. 1000-03, 1037-38. She reported symptoms of social anxiety, Tr. at pp. 471, 490, 1037, but was able to attend an art group that she enjoyed and even socialized with other patients whom she found supportive. Tr. at p. 949. She is working part-time and admitted to the ability to get along with other employees even in a job that requires interaction with the public. Tr. at pp. 1057-58. Plaintiff expressed the desire to go back to school to become a clinician. Tr. at p. 950. As shown above, the ALJ did not only note positive activities and symptoms but contrasted them with her alleged limitations. Tr. at pp. 1038. Although Plaintiff testified that her mental health symptoms and limitations prevent her from working more than part-time, evidence in the record, as the ALJ correctly notes, demonstrated that Plaintiff is capable of doing more than alleged. Tr. at pp. 828, 908.

The Court finds that the ALJ correctly applied the proper legal standards in assessing Plaintiff's symptoms and adequately specified the reasons for discrediting Plaintiff's statements. Therefore, the ALJ's evaluation of symptoms is supported by substantial evidence.

## IV. CONCLUSION

**ACCORDINGLY,** it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

**ORDERED**, that the Commissioner's Decision is **AFFIRMED** and the Complaint **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Date: March  11, 2025
      Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge